# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **D. DOUGLAS HOWARD, JR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **CASE NO. 09-3450** |
| | * | |
| **LESLEY SIMMONS ST. GERMAIN,** | * | **SECTION "I"** |
| **HILLARY ROSE SMITH,** | * | |
| **MELISSA BRANIGHAN,** | * | **MAGISTRATE (4)** |
| **MARK EDW. ANDREWS,** | * | |
| **ANDREWS ARTS & SCIENCES LAW, LLC,** | * | |
| **and DAVID E. SIMMONS, DDS** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COUNTER-DEFENDANT'S MEMORANDUM
## IN SUPPORT OF RULE 12(b)(6) MOTION

**MAY IT PLEASE THE COURT:**

Counter-defendant herein, D. Douglas Howard, Jr. ("Howard"), submits this memorandum praying for the dismissal of all claims urged against him. Counter-plaintiffs' claims of malpractice, breach of contract, and infliction of emotional distress are prescribed and/or barred by the doctrine of *res judicata*. In addition, counter-plaintiffs have failed to allege sufficient facts to maintain their claim of abuse of process. Thus, all claims must be dismissed.

**RELEVANT FACTS**

Counter-plaintiffs, Lesley St. Germain ("St. Germaine"), Hillary Smith Hillyer ("Hillyer"), and Melissa Branighan Lumimais ("Branighan") are former clients of Howard, Simmons is St. Germaine's father, and Andrews is their attorney-of-record in this matter and for civil matter no. 07-9040 that was heard before this Honorable Court.  All claims arise from the relationships and/or interactions between counter-plaintiffs and Howard.

Hillyer signed a contract with Howard on November 14, 2005; he provided legal services to her until June 5, 2006.  (See R. Doc. 4, Counter Claim, ¶¶80, 90).  St. Germain signed a contract on June 5, 2006, with Howard who represented her until November 21, 2006.  (See R. Doc. 4, Counter Claim, ¶¶ 47, 49).  Branighan signed a contract with Howard on January 12, 2007, and he provided legal services for her over the next few months. (See R. Doc. 4, Counter Claim, ¶97 and CP-8).  Although Howard achieved excellent results for all the above counter-plaintiffs, they now make the ludicrous claim that his representation of them amounted to legal malpractice, breach of contract, and infliction of emotional distress.

As this Court is aware, this suit has already worked its way through the federal system once. It  is the continuation of a vendetta towards Howard by St. Germain because he filed a Suit on Open Account against her for unpaid fees after he secured her divorce judgment.  (See R. Doc. 17-3, Petition for Damages).[1]   Howard obtained a default judgment after she and her current attorney,

---

[1]    A copy of the Petition for Damages with its exhibits is attached for the Court's convenience.  A review of the documents submitted by counter-plaintiffs indicate that counter-plaintiffs failed to include in the record from state court the exhibits filed with the Petition for Damages despite this Court's May 11, 2009, Order to do so.

Mark Andrews, did not timely respond to this suit. (See R. Doc. 12-1, Petition for Damages, Exhibit "3"). St. Germain tried to nullify the judgment but, because she had no legitimate grounds, the judgment stood and Howard collected his fees. (See R. Doc. 12-1, Petition for Damages, Exhibit "5").

St. Germain then sued Howard in Civil District Court, Parish of Orleans, alleging the exact malpractice and breach of contract claims as alleged here. (See R. Doc. 12-1, Petition for Damages, Exhibit "6"). Howard filed a Motion to Dismiss based upon *res judicata*. (See R. Doc. 12-1, Petition for Damages, Exhibit "7"). St. Germain's attorney, Andrews, who knew St. Germain's claims had no merit, subsequently asked Howard if he would dismiss his Petition. As a professional courtesy, Howard allowed him to withdraw the Petition and file a Consent Motion to Dismiss Without Prejudice which was signed on  September 8, 2007. (See R. Doc. 12-1, Petition for Damages, Exhibit "8").

St. Germain, in her continuing attack on Howard, recruited Branighan and Hillyer to file a federal suit with her on November 20, 2007, re-urging the malpractice and breach of contract claims and adding a new claim that alleged RICO violations. The new claims absurdly and maliciously characterized Howard as a "racketeer" engaged in organized crime. (See R. Doc. 12-1, Petition for Damages, Exhibit "9"). The district court summarily dismissed the state claims without prejudice and the RICO claims with prejudice. (See R. Doc. 12-1, Petition for Damages, Exhibit "11"). Plaintiffs appealed and the Fifth Circuit upheld the dismissals. (See R. Doc. 12-1, Petition for Damages, Exhibit "14" and "16").

Contemporaneously with the federal pleadings, Andrews filed a complaint with the Office of Disciplinary Council alleging that Howard violated the Code of Professional Conduct.[2]  Smith also filed a similar complaint.  Both complaints were dismissed and there was no finding that any of Howard's actions violated the Code of Professional Ethics.

Howard, in response to counter-plaintiffs' conduct stemming back to their response to the Suit on Open Account up through pleadings alleging that he committed mail and wire fraud, filed suit against counter-plaintiffs for defamation, abuse of process, malicious prosecution, and infliction of emotional distress.  Counter-plaintiffs then filed a reconventional demand, which has now been removed to this Court, re-urging many of the same claims that were dismissed without prejudice by this Court on March 5, 2008.

## LEGAL ARGUMENT

Counter-plaintiffs couch their claims as malpractice, breach of contract, infliction of emotional distress, and abuse of process.  However, all these claims, with the exception of abuse of process are governed by La. R.S. 9:5605 which provides in pertinent part:

> **No action for damages against any attorney at law** duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, **whether based upon tort, or breach of contract**, or otherwise,

---

[2]     Prior to the Fifth Circuit's decision, all complaints, and the identity of the complainant, filed with the Office of Disciplinary Council were confidential.  However, in *In Re: Warner and Rando*, 05-B-1303 (La. April 17, 2009), the Louisiana Supreme Court held that the confidentiality rule imposed upon participants in an attorney disciplinary proceeding is unconstitutional.

4

> **arising out of an engagement to provide legal services** shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect. (Emphasis added)

Thus, the malpractice, tort, and breach of contract claims fall under this statute and have prescribed. Furthermore,, counter-plaintiffs fail to allege sufficient facts to sustain their claim for abuse of process. Accordingly, all their claims must be dismissed.

## I.     Majority of Claims are Prescribed

Counter-plaintiffs' claims of malpractice, breach of contract, and infliction of emotional distress are perempted because they were not filed within the one year period after each alleged act of malpractice was discovered. As stated above, all malpractice claims must be instituted within one year from the date of the alleged act, omission, or neglect, or the date that the alleged act, omission, or neglect is discovered or should have been discovered. In addition, there is a three year peremptive period by which all malpractice actions must be filed from the date of the alleged act, omission, or neglect irrespective of the complainant's knowledge.   Both the one and three year periods are peremptive making counter-plaintiffs's claims untimely.

### A.     Peremptive Period Cannot be Tolled

Counter-plaintiffs argue that their claims are timely because they were filed in federal court on November 20, 2007. Counter-plaintiffs are wrong. They state malpractice claims were dismissed **without** prejudice on March 5, 2008, at which time, any claims not already prescribed had to be filed

in state court to be preserved.  (See R. Doc. 4, Counter Claim, Exhibit "CP-1").  However, counter-plaintiffs elected not to file their claims until more than a year later  – on March 29, 2009 – which was too late.  Counter-plaintiffs note in their Counterclaim  that their deadline for appealing the dismissal of their claims to the U.S. Supreme Court has not elapsed.[3]  Their notation is of no moment because the peremptive periods established by the malpractice statute cannot be tolled.  La. Rev. Stat. 9:5605 provides that:

> The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

Louisiana law and jurisprudence have long recognized that a peremption statute totally destroys the previously existing right with the result that, upon expiration of the peremptive period, a cause of action or substantive right no longer exists to be enforced.  La. Civ. Code art. 3458; *Pounds v. Schori,* 377 So.2d 1195, 1198 (La. 1979).   Thus, unlike prescriptive periods, peremption may not be renounced, interrupted, or suspended for any reason.  La. Civ. Code art. 3461.

The Louisiana Supreme Court has held that the one-year period as well as the three-year period outlined in La. Rev. Stat. 9:5605 are  *peremptive*, not prescriptive.  *Reeder v. North,* 701 So.2d 1291 (La. 1997).  The *Reeder* Court explained the proper interpretation of the peremptive periods contained in La. R.S. 9:5605 as follows:

---

[3]      If counter-plaintiffs are arguing that their federal case has not been fully adjudicated, then this suit would be premature under La. Code Civ. Proc. art. 561.  However, their reasoning is flawed because final judgments have been rendered in the federal suit.

> Peremption differs from prescription in several respects.  Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ. Code Art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ. Code Art. 3458).  Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a  specific period.  **Accordingly, nothing may interfere with the running of a peremptive period.**  It may not be interrupted or suspended; there is no provision for its renunciation.  And exceptions such as *contra non valentem* are not applicable. (Emphasis added).

*Id*. at 1298, citing *Hebert v. Doctors Memorial Hospital,* 486 So.2d 717, 723 (La. 1986).

This interpretation has been unanimously followed by all Courts of Appeal in this state. *Carroll v. Wolfe,* 1998-1910 (La. App. 1 Cir. 9/24/99), 754 So.2d 1038; *Shreveport Credit Recovery, Inc. v. Modelist,* 33,369 (La. App. 2 Cir. 5/15/00), 760 So.2d 681, *writ denied*, 2000-2159 (La. 10/27/00), 772 So.2d 125; *Bourque v. Hoychick,* 97-627 (La. App. 3 Cir. 11/19/97), 704 So.2d 815; *Turnbull v. Thensted,* 99-0025 (La. App. 4 Cir. 3/1/00), 757 So.2d 145, *writs denied*, 2000-1502 and 2000-1503 (La. 8/31/00), 766 So.2d 1277 and 1278; and *Academy Mortgage Co., L.L.C. v. Juarez,* 98-963 (La. App. 5 Cir. 6/1/99), 740 So.2d 708, *writ denied*, 99-2238 (La. 11/5/99), 750 So.2d 191. Thus, the prescriptive/peremptive period established by La. Rev. Stat. 9:5605 applies here and has not tolled.

### B.    Breach of Contract Claims Subsumed into Malpractice Claims

Counter-plaintiffs make the conflicting and illogical claims that (1) Howard's contract is unenforceable because it is one of adhesion, and (2) Howard breached his contract with them.  They are wrong on both counts.  Nonetheless, these assertions are irrelevant because their claims of breach of contract are subsumed in their claims for legal malpractice.  All of the breach of contract claims

7

alleged by counter-plaintiffs arise out of the legal representation that Howard provided them.   As stated *supra*, "No action for damages against any attorney at law . . . whether based upon tort, **or breach of contract**, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect. . . ." La. Rev. Stat. 9:5605.  (Emphasis added).

For example, in *Granger v. Middleton*, 2006-1351 (La. App. 3 Cir. 2/7/07), 948 So. 2d 1272, *writ denied*, 2007-0506 (La. App. 3 Cir. 2/7/07), 855 So.2d 692, the plaintiff filed a breach of contract claim against his attorney for overbilling and alleged that a ten-year prescription applied. The Court disagreed because the peremptive periods set forth in La. Rev. Stat. 9:5605 apply to all claims arising out of an engagement to provide legal services including breach of contract.  *Id.* at 1274.  The Court correctly applied the one and three year periods provided by La. R.S. 9:5605 to contract claim and dismissed it.  *Id.*   The same result is warranted here.  All of counter-plaintiffs' breach of contract claims arise from their contract with Howard for his legal services.  Therefore, La. Rev. Stat. 9:5605 controls counter-plaintiffs's breach of contract claims; these claims are prescribed and must be dismissed with prejudice.

## II.    Hillyer's Claims Are Prescribed

As stated earlier, a claim against an attorney must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered."  *See* La. Rev. Stat. 9:5605. Therefore, prescription commences to run when a claimant knew or should have known of the existence of facts

that would have enabled her to state a cause of action for legal malpractice. *Olivier v. Poirier*, 563 So.2d1227 (La. App. 1 Cir. 1990), *writ denied*, 568 So.2d 1054 (La. 1990).

The standard "should have known" establishes the rule that when a plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed, the commencement of prescription by virtue of such knowledge is triggered, even if plaintiff asserts a limited ability to comprehend and evaluate the facts. *Taussig v. Leithead*, 96-960 (La. App. 3 Cir. 2/19/97), 689 So.2d 680, 682; *Carroll v. Wolfe*, 1998-1910 (La. App. 1 Cir. 9/24/99), 754 So.2d 1038, 1041; see also *Ledbetter v. Wheeler*, 31,357 (La. App. 2 Cir. 12/9/98), 722 So.2d 382; *Turnbull v. Thensted*, 1999-0025 (La. App. 4 Cir. 3/1/00), 757  So.2d 145, citing *Griffin v. Kinberger*, 507 So.2d 821 (La. 1987).  The Court must evaluate the reasonableness of the victim's act or failure to act, in view of the facts known, or that should have been known to him. *Id.*   Thus, the inquiry becomes, "When would a reasonable man have been put on notice that malpractice may have been committed?"  *See Paternostro v. La Rocca*, 2001-0333 (La. App. 1 Cir. 3/28/02), 813 So.2d 630.  That notice can be actual or constructive.[4]  In the present case and based upon the facts alleged in the counterclaim, Hillyer did not file a malpractice claim within one year of when she knew or should have known of the facts underlying her cause of action.

---

[4]      Constructive knowledge is whatever notice is enough to excite attention and put the injured person on guard and call for inquiry.  *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 510-511.

### A.    Malpractice Claims Prescribed

Howard represented Hillyer from November 14, 2005, through June 5, 2006.  (See R. Doc. 4, Counter Claim, ¶¶80, 90).   She alleges that Howard committed malpractice during the representation by:

(1)    Charging an administrative fee of $20 for certain months during the representation to cover expenses such as copying, mailing, and faxes;

(2)    Unspecified "overbilling" and billing for unauthorized work such as the preparation and filing of two divorce petitions;

(3)    Disregarding unspecified "clearly-stated wishes" during the representation;

(4)    Withdrawing from representation;

(5)    Using the name "Howard, Reed and Taylor" on certain correspondence when the contract for services was signed only by D. Douglas Howard;

(6)    Sharing fees with other unnamed attorneys; and

(7)    Not delivering Hillyer's file to her until September 21, 2007, shortly after she requested it.[5]

(See R. Doc. 4, Counter Claim, ¶¶81, 83-91, 95-96).

Notwithstanding that Hillyer's claims are totally without merit, these claims are prescribed. Hillyer was aware of all the above facts contemporaneously with their occurrence.  For example, she was aware that she was billed a monthly administrative fee, and allegedly was overbilled and/or

---

[5]    Smith misleads the Court by stating that she received only "a portion of her case file" when the exhibit she attached indicates she received her entire file except for copies of the bills which she had already gotten.  (See R. Doc. 4, Counter Claim, ¶81 and CP-8).

billed for unauthorized work when she received bills on November 20, 2005, December 20, 2005, January 20, 2006, February 20 2006, March 20, 2006, April 20, 2006, and May 20, 2006.  (See R. Doc. 4, Counter Claim, ¶84).  Also, when Hillyer received these bills, she became aware that the statements were headed "Howard and Reed."  Assuming these alleged acts were malpractice, which they were not, a reasonable person would have been placed on notice of possible malpractice at the time she received the bills.  Thus, all claims arising from the billing prescribed one year from when she received the bills, i.e. no later than May 20, 2007.

Further, Hillyer knew that Howard withdrew from representing her on June 20, 2006.  Therefore, any claim of malpractice based upon Howard's withdrawal prescribed on June 20, 2007.  Last, Hillyer's claim that Howard delayed giving her file to her until September 21, 2007, prescribed one year later on September 21, 2008.  Thus, based on the allegations in the Counter Claim, these claims are prescribed.

In an attempt to sidestep the untimeliness of her claims, Hillyer asserts that she did not learn of any of the above alleged malpractice until she received her file on September 21, 2007.  (See R. Doc. 4, Counter Claim, ¶81).  "Smith . . . did not have notice of the impropriety of his actions nor of her causes of action until after she obtained a portion of her case file on September 21, 2007".  (See R. Doc. 4, Counter Claim, ¶81).  This argument has no merit for two reasons.  First, prescription begins when the plaintiff learns of the facts underlying the cause of action, not when she believes she has a cause of action.  Second, **by Hiller's own admission, all her claims are prescribed because they had to be filed no later than September 21, 2008**.   Her claim for

malpractice was not filed in state court until March 23, 2009, and must be dismissed with prejudice. (See R. Doc. 4, Counter Claim, ¶39).

**B.    Contract and Tort Claims Subsumed under La. Rev. Stat. 9:5605 and Prescribed**

Smith also claims, albeit erroneously, that the contract she signed was one of adhesion and has sued Howard for breach of contract. (See R. Doc. 4, Counter Claim, ¶¶83, 93-94). As explained *supra*, these claims fall under La. Rev. Stat. 9:5605 and are governed by the prescriptive periods set forth therein. Because the contract was signed on November 14, 2005, and she was aware of its contents at that time, she had one year from that date to file a claim against Howard. She did not. Nonetheless, because three years has passed since the contract was signed, even if she now claims she did not know that the contract was illegal, her right to pursue this claim expired on November 14, 2008, and it must be dismissed with prejudice.

Smith also alleges that Howard's conduct caused her "serious emotional distress" and unnamed financial loss. Her claims for infliction of emotional distress is a tort claim that falls under La. Rev. Stat. 9:5606 and prescribed one year from the date of the alleged actions. All the actions about which she complains occurred during the time when Howard represented her which ended on June 5, 2006. (See R. Doc. 4, Counter Claim, ¶90). Thus, she had one year from that date, or until June 5, 2007, to file her claim and she failed to do so. All Smith's claims must be dismissed with prejudice.

**III.    Branighan's Claims are Prescribed**

Branighan's malpractice claims also are prescribed. Howard began representing her on January 12, 2007, and performed legal services for her through March of 2007. (See R. Doc. 4,

12

Counter Claim, ¶¶97, 101 and Exhibit CP-8).  Branighan alleges that Howard committed malpractice when he:

(1)     Filed a Petition for Protection from Abuse in January of 2007 on her behalf allegedly against her wishes;

(2)     Allegedly asked her sign a verifying affidavit in January of 2007 before she read the Petition for Divorce;

(3)     Sent out bills from January 2007 though March 2007 with the letterhead Howard and Reed although her contract for services was signed by D. Douglas Howard;

(4)     Billed Branighan for an agreed-upon administrative fee from January 2007 though March 2007;

(5)     Allegedly disregarded her wishes in handling her divorce; and

(6)     Allegedly shared fees with unnamed attorneys.

(See R. Doc. 4, Counter Claim, ¶¶101-107, 111-112).

Even though there is no merit to any of her claims, the counterclaim provides that the last incidence of alleged malpractice occurred in March of 2007; thus, Branighan had until March of 2008 to file a claim for malpractice.  She did not file this action until March of 2009 – one year too late.  All her claims are prescribed and must be dismissed.

Like Smith, Branighan alleges breach of contract and infliction of emotional distress.  (See R. Doc. 4, Counter Claim, ¶¶108-110).  These claims are based upon Howard's actions while he represented her.  As noted in counter-plaintiffs' counterclaim, the contract was signed in January of

13

2007 and all work by Howard was completed in March of 2007.  Thus, Branighan had one year from that date, or until March of 2008, to file these claims against Howard.  They were not filed until March 23, 2009, over one year too late.  (See R. Doc. 4, Counter Claim, ¶39).  All Branighan's claim must be dismissed with prejudice.

**IV.   St. Germain's Claims Are Prescribed and Estopped**

St. Germain litigated this matter to conclusion several years ago.  Therefore, under the doctrine of *res judicata*, she cannot rehash the same claims in a different forum.  In addition, all her claims of malpractice and breach of contract are prescribed because the fraud exclusion she asserts does not apply to the facts at hand.

**A.      St. Germain's Claims are Estopped**

St. Germain is estopped from asserting any claims stemming from Howard's legal representation of her because these claims have already been adjudicated.  (See R. Doc. 12-1, Petition for Damages, Exhibit "3").  Once a final judgment is rendered and signed, the claims become *res judicata* and she cannot re-litigate the same claims.

Yet, this is exactly what St. Germain does in this counterclaim.  This saga started when Howard sued St. Germain in First City Court for a Suit on Open Account for unpaid fees.  (See R. Doc. 12-1, Petition for Damages, Exhibit "2").  That suit triggered St. Germain's obligation to counter-claim that the bills were somehow irregular, were based upon unauthorized work, and/or deviated from her signed contract with Howard.  Indeed, her Answer and Defenses asserted the almost exact claims that she makes in this suit.  (See R. Doc. 12-1, Petition for Damages, Exhibit "4").  The Answer was filed untimely (as are the claims here) and the Court rendered Judgment for

14

Howard ordering St. Germain to pay the unpaid fees, attorneys fees, costs, and judicial interest.  (See R. Doc. 12-1, Petition for Damages, Exhibit "3").  Thus, a final judgment was rendered June 15, 2007, on the issue of Howard's bills to and representation of St. Germain.

St. Germain may erroneously argue that *res judicata* only applies to the allegations on the face of the Suit on Open Account, and not her claims of breach of contract, malpractice, and infliction of emotional distress.  However, La. Rev. Stat. 13:4231 states, in pertinent part, as follows:

> If the judgment is in favor of the defendant, **all causes of action** existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

La. R.S. 13:4231(2) (emphasis added).  The Louisiana Supreme Court has unequivocally stated that **all** claims arising out of the same operative facts must be brought together in a single proceeding or they will be barred by *res judicata*.  In *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238-39 (La. 1993), the Louisiana Supreme Court ruled as follows:

> [A]ll actions arising out of the same transaction or occurrence must be brought together or be subject to a plea of res judicata. La. Rev. Stat. 13:4231; La. Code Civ. Proc. Art. 425.
>
> . . . . There is only *one* cause of action (although several demands or theories of recovery may be asserted thereon) when the operative facts of one transaction or occurrence give rise to the plaintiff's right to assert the action against the defendant.

*Id.* at 1238-39 (emphasis in original).  Thus, all claims arising out of Howard's representation of St. Germain are estopped and must be dismissed with prejudice.

**B.      La. Rev. Stat. 9:5605(E) Does Not Apply**

Even if St. Germain's claims are not estopped, which they are, her claims are prescribed because they were filed too late.  In an attempt to resurrect her extinguished right to pursue a claim of malpractice,  St. Germain incorrectly asserts that the peremptive period for malpractice claims does not apply to her citing La. Rev. Stat. 9:5605(E) for support.  Section E provides that the peremptive period does not apply in cases of fraud which is defined in Civil Code Article 1953 as

> [A] misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of convenience to the other.  Fraud may also result from silence or inaction.

La. Civ. Code art. 1953.

To prove fraud, a plaintiff must establish an intent to defraud and actual or potential loss or damages.  *Transworld Drilling Co. v. Texas General Resources, Inc.,* 604 So. 2d 586, 590 (La. App. 4 Cir. 1992), *writs denied,* 608 2d.174 (La. 1992).  Thus, the standard proof required is (1) a misrepresentation or omission of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury.  *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1131 n. 33 (5th Cir. 1988), *vacated on other grounds sub nom.,* 492 U.S. 918, 109 S.Ct. 3242 (1989); *see also*, *Shelton v. Standard/700 Associates,* 2001-0587, p. 5 (La.10/16/01), 798 So. 2d 60, 64; *Whitehead v. American Coachworks, Inc.*, 2002-0027 (La. App. 1 Cir. 12/20/02), 837 So. 2d 678, 682.  Further, the circumstances constituting fraud **must be alleged with particularity**. La. Civ. Code art. 856 (emphasis added).

16

As an example, in *Coffey v. Block*, 1999-1221 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1181, *writ denied*, 2000-226 (La. 10/27/00), 772 So. 2d 651, the appellate court found that sufficient facts had been alleged to support a claim of fraud.  The *Coffey* plaintiff alleged that her attorney did not investigate the date of her accident, which was on February 28, 1992, and as a result filed suit too late on March 2, 1993. After the opposing counsel filed a Motion to Dismiss based upon prescription, plaintiff's attorney lied to plaintiff in May of 1993 when he stated that he had met with the judge who said that the petition had been timely filed.  Plaintiff did not learn that the attorney had lied to her until November 22, 1996, when the Motion to Dismiss was granted and the three year prescription had expired.  She filed suit against her attorney in August of 1997.  *Id.*  In her Petition, she alleged that the attorney deliberately misrepresented the truth so that her claim would prescribe. *Id.*  The appellate court held her allegations sufficient pled fraud: the attorney misrepresented the date of the accident, he lied about the conversation with the judge for the purpose of delaying the potential malpractice lawsuit to avoid being sued for malpractice, and defendant lost her right to sue in the underlying case.  *Id.*

In applying the relevant jurisprudence to the facts at hand, no fraud has been sufficiently alleged.  Specifically, St. Germain fails to allege with particularity that Howard misrepresented, suppressed, or omitted any material fact with the specific intent to obtain an unjust advantage or to cause damage to St. Germain, and that she suffered an injury based upon the alleged omission or misrepresentation.  Because there has been no fraud, Section 9:5605(E) does not apply and her claims are prescribed.

**1.   Howard's Informing St. Germain of Relationship with Deceased Relative Was Not Fraud**

St. Germain alleges that Howard committed fraud by not informing her when she signed her contract on June 5, 2006, that he had known her then-husband's deceased grandfather, Van Normand Bailey.  (See R. Doc. 4, Counter Claim, ¶¶47, 61-62).  Her claim of fraud fails because Howard did not suppress any **material** facts; Howard's acquaintance with a deceased relative of the husband is immaterial here because St. Germain supplies no factual support, just mere unwarranted presumptions, that the relationship negatively impacted Howard's representation of her.  In addition, her claim is undermined by her failure to allege what advantage this delayed omission gained Howard.  By St. Germain's own admission, Howard informed her of the relationship in July – about one month after he began representing her – and gave her the option of keeping him as her attorney or not. (See R. Doc. 4, Counter Claim, ¶62).  Howard was not St. Germain's first divorce attorney (nor her last), so she clearly was aware of her option to retain new counsel.  St. Germain illogically argues that the sole reason she kept Howard as her attorney (insinuating she wanted to fire him) was because he threatened to withdraw from the representation.  (See R. Doc. 4, Counter Claim, ¶62).  The argument is nonsensical and underscores the lack of factual support for her claim of "fraud."

Second, at no time does St. Germain allege that Howard intentionally and deliberately withheld his knowing her husband's deceased grandfather.  Indeed, **she admits that Howard told her of the relationship**.  (See R. Doc. 4, Counter Claim, ¶61).  Although she alleges that Howard knew of the connection prior to his telling her, she offers no factual support for her embellishment of the facts because there is none.  It is not fraud to reveal a possible conflict of interest as soon as

18

party learns of it; indeed, it is ethical and what Howard did.  Again, St. Germain knew of the relationship and opted to keep Howard as her attorney.

Last, St. Germain has not specified any damage that she suffered as a result of Howard informing her of the relationship about a month after he began representing her.  That is, St. Germain does not state how Howard's not informing her of this fact until a short time after he began representing her created an unfair advantage for him or damaged her.   St. Germain had the option of terminating her relationship with Howard if she believed his knowing a deceased relative of her husband would cause her damage, but she did not.  She even admits the relationship might only have created a "possible divided loyalty."  (See R. Doc. 4, Counter Claim, ¶61).  This speculative and unnamed damage is not what is needed to show damage based upon fraud.  Her claim of fraud is disingenuous at best and cannot defeat peremption.

### 2.     No Fraud Regarding the Police Department

St. Germain's next allegation of fraud is even more ludicrous.  She claims that Howard committed fraud by not revealing that he allegedly has a "close involvement" with the New Orleans Police Department and is a member of Police Association of New Orleans ("PANO").  (See R. Doc. 4, Counter Claim, ¶63). Yet, she provides no facts to support her speculative claim.  Instead, she proffers statements made by Howard, which did not occur, as her only evidence of his "close

relationship" with PANO.[6] [7]   Suing law enforcement agencies for civil rights violations does not equate to having a close relationship with them or their members.

However, taking the allegations as true solely for the purpose of this Motion to Dismiss, St. Germain has made no showing how these purported suppressions/omissions created an unjust advantage for Howard.  Instead, in a rambling and another completely illogical statement, she claims that the fact that her husband used a police report to obtain a restraining order against her is support for her claim of fraud.  (See R. Doc. 4, Counter Claim, ¶63).   Besides this being totally irrelevant to her claim of fraud, she ignores that the restraining order and her arrest occurred **before** Howard even began representing her or how her husband's actions are imputed to Howard's alleged omission.

As proof of how she was damaged by Howard's alleged suppression of his alleged ties with PANO, she avers that Howard refused to use an unnamed article of her husband's that might "**possibly** comprise evidence of **possible** improper conduct."  (Emphasis added).  (See R. Doc. 4,

---

[6]      Under the Federal Rules of Evidence and relevant jurisprudence in the Fifth Circuit, this Court may take judicial notice of documents that are part of public record.  FED. RULE EVID. 201.

[7]      The absurdity of this claim is underscored by the Eastern District's own records which includes numerous lawsuits filed by Howard against the NOPD and/or its members:  *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1981); *Johnson v. Thomas*, Civ. No. 94-00304; *Crouch v. Regis*, Civ. No. 94-01866; *Pritchard v. Seigal*, Civ. No. 95-02487; *Youngblood v. Blender*, Civ. No. 99-02010; and *Reese v. Mc Cord*, Civ. No. 01-00901; and against other law enforcement agencies: *Jones .v St. Tammany Parish*, Civ. No. 96-03737; *Daschner v. Sutton*, Civ. No. 99-02727;  *Oney v. Rosa*, Civ. No. 02-02681; *Smith v. Boudreaux*, Civ. No. 03-01341; *Broussard v. Kowalski*, Civ. No. 03-02875; *Manton v. Strain*, Civ. No. 09-0339; and *Williams v. Jones*, Civ. No. 09-3207.

Counter Claim, ¶63).   Her alleged speculative damages are insufficient to show fraud.  St. Germain's allegations of fraud fall woefully short and the fraudulent exception to peremption does not apply here.

### C.   St. Germain's Claims are Prescribed

All of St. Germain's claims of malpractice, which includes her breach of contract claim, are prescribed.  She asserts in the counterclaim  that she learned of the alleged malpractice in November 21, 2006.   Assuming *arguendo* that to be true, even though she clearly was aware of the facts underlying her cause of action well before that date, she had one year from November 21, 2006, to file suit against Howard for malpractice. She originally filed suit on July 6, 2007, making the same assertions as here, but dismissed her claim without prejudice on September 28, 2007.  (See R. Doc. 12-1, Petition for Damages, Exhibits "6" and "8").   Therefore, at the very latest, St. Germain knew of the alleged malpractice on July 6, 2007, and had one year from that date to re-urge her claims. She filed the claim in federal court in November of 2007, but those claims were dismissed with prejudice.  Under Rev. Stat. 9:5605, her claims did not toll while the federal claim was pending. She did not file this counterclaim until March 25, 2009 – a year and a half too late.  All her claims are prescribed and must be dismissed.

## V.   Request for Accounting is Moot

Counter-plaintiffs St. Germain, Smith, and Branighan demand an accounting from Howard. (See R. Doc. 4, Counter Claim, ¶¶51, 82, 99).  Although they do not explain the purpose of the accounting or the information that they want in the "accounting," their request is moot because they referenced and/or attached their bills from Howard to their pleading.  (See R. Doc. 4, Counter

Claim, CP-5 and CP- 8). Thus, because they have received a bill for all services rendered by Howard with a detailed description of all fees and costs as well as payments they made to Howard, their request is moot.

## VI.     Abuse of Process Claim Must be Dismissed

Andrews alleges on behalf of counter-plaintiffs that Howard has abused the legal process by filing suit against him and for moving to disqualify him from representing the other counter-plaintiffs based upon an inherent conflict of interest in that representation. Abuse of process mandates that the counter-plaintiffs prove that the counter-defendant had an ulterior motive **and** that there was an irregularity in the process itself regarding the pleadings in question. *Alden v. Lorning,* 04-0724, p. 5 (La. App. 4 Cir. 5/4/05), 904 So.2d 24, 28. An "'[a]buse of process involves the misuse of a process [claim] already legally issued whereby a party attempts to obtain a result not proper under the law.'" *Alden,* 04-0724, p. 6, 904 So.2d at 28, *quoting Goldstein v. Serio,* 496 So.2d 412, 415 (La. App. 4th Cir.1986). Using the legal process for an improper reason is the crux of finding an abuse of process. *Id.*

> That is, abuse of process is the misuse of *legal process* for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ. It is malicious perversion of a *legally issued process* whereby a result not lawfully or properly obtainable under it is attempted to be secured. [Emphasis added.]

*Americo v. Dale*, 05-749 (La. App. 5 Cir. 3/28/06), 927 So.2d 586 (citing *Succession of Cutrer v. Curtis,* 341 So.2d 1209, 1214 (La. App. 1 Cir.1976), *writ denied,* 343 So.2d 201 (La.1977).

To avoid dismissal, Andrews must allege an improper reason **and** that there was an irregularity in Howard's filing suit against him and moving to disqualify him. The counterclaim fails to allege sufficient facts to maintain this cause of action as there are no allegations that there was an irregularity in the process of Howard filing either the suit and the motion at issue. This failure alone mandates dismissal of this claim.

However, in addition, Andrews fails to allege any improper reason for the filing of the suit and motion. Instead, Andrews uses circuitous reasoning and states that the "improper, ulterior, and perverse motive" for filing the motion to disqualify him is to disqualify him. (See R. Doc. 4, Counter Claim, ¶113). Indeed, disqualifying Andrews is not the "ulterior" motive for the filing but the relief being sought. Regular use of process cannot constitute abuse, even if the user was actuated by a wrongful motive, purpose, or intent, or by malice. *Waguespack, Seago and Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App.1.Cir. 9/22/00), 768 So.2d 287. Thus, even though Howard did not file any pleading for a wrongful purpose or intent, Howard's motive for filing suit against Andrews and the Motion to Disqualify him is of no moment because Howard filed the pleadings in the regular course of process seeking the stated relief. In fact, his "motive" is the same as for all litigants – to correct civil wrongs through appropriate legal channels.

Notably, Andrews' claim that Howard is unfairly attempting to deprive counter-plaintiffs of being represented by the attorney of their choice is quite ironic. Andrews last week opposed Howard's Motion to Enroll undersigned counsel, who has represented Howard in this and the underlying matters since the RICO suit was filed in March of 2008, for no legitimate purpose but to

thwart a simple continuation of a hearing.  Counter-plaintiffs' claim of abuse of process must be dismissed as the counterclaim does not allege facts to support it.

## SUMMARY

All the malpractice, breach of contract, and infliction of emotional distress claims alleged in the counterclaim are prescribed and cannot be tolled.  In addition, St. Germain's claims are barred by *res judicata*.  Last, counter-plaintiffs have not alleged sufficient facts to maintain a claim for abuse of process.  For these reasons, all counter-plaintiffs' claims must be dismissed.

          /s/Joanne Rinardo
NANCY J. MARSHALL T.A. (#8955)
namrshall@dkslaw.com
JOANNE RINARDO (#24201)
jrinardo@dkslaw.com
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130-3672
Telephone:  (504) 581-5141
Facsimile:   (504) 566-1201
**Attorneys for Counter-Defendant**,
**D. Douglas Howard, Jr.**

**CERTIFICATE OF SERVICE**

I certify that a copy of the above and foregoing motion has been served upon, **Mark E. Andrews, Esq., Andrews Arts & Sciences Law, LLC,** 7104 Coliseum Street, New Orleans, Louisiana 70118, by electronic means, by fax, by hand, and/or by placing same in the U.S. Mail, postage prepaid and properly addressed, this **29th day of May, 2009.**

                                    /s/Joanne Rinardo